and we'll turn to Williams v. MTA Bus Company 20-2985. Yes, Your Honors, this is Andrew Ryszynski for the appellant, Mike Williams. May I proceed? Please. Go ahead. May it please the court. The central issue in this case is, is there an obligation for employers here, such as the MTA, to independently assess accommodations for the pre-employment process? Specifically, when that pre-employment process is open to the public and no qualifications of any candidates are assessed at the time of when someone signs up for a pre-employment test. The appellee in this matter has a blanket policy that it will not provide an ASL interpreter for any position for its pre-employment test. And they justify not providing an interpreter for pre-employment tests by saying that every job has the requirements that one has to speak English and be understood in English. And we posit that there has to be an independent assessment just as the EEOC interpretive guidance advises and the New York City Human Rights Commission legal enforcement guidance advises as well, that there is an independent assessment for a need of accommodation. And the reason for this is because what would happen would be absurd results, such as essentially someone could put in there any position that there is a speaking English and understanding English requirement and refuse an ASL interpreter to a candidate for an interview and force them to try to communicate without an ASL interpreter and actually test whether they can be understood and understand English through the interview process. And if they can't, they could be disqualified from the job. Here, Mr. Williams' qualifications were never assessed when he signed up for the test. And he requested an ASL interpreter, and he was deemed qualified to take the test. It wasn't until an ad hoc determination in a deposition where one of the witnesses said that he didn't have the requisite experience or qualifications for this position. They never made that determination until way after the lawsuit was filed. And it is an open question of fact whether he is qualified for the position. May I ask you a question? This is Judge Raggi. I thought it was undisputed that he was unable to communicate in English. Did I misunderstand? Yes, Your Honor. So, it is disputed that he has some ability to communicate in English. We hired a neurolinguistics expert, and there are writings between the parties via email and otherwise where you can see his English abilities. And in our expert report, it explains that Mr. Williams being deaf has affected his ability to acquire English. No, I understand the circumstances that contribute to it, but I did not think it was disputed that he is unable to communicate in English. And I'm just asking whether, in fact, you're claiming that he is able to communicate in English. He is able to communicate in English albeit very limitedly. Well, you see, that gets us into what the issue is here, which is you can't discriminate against a person who's qualified for the job. They have as a job qualification the ability to communicate in English. Now then, I recognize that Section 12.112.B.7 explains that you can't give tests that focus on a disability rather than a qualification. But the question for us may be whether someone who is unable to satisfy the communication in English requirement can complain about a 12.112.B.7 failure. I'm trying to figure out whether your client is agreeing that he can't communicate in English but nevertheless thinks he can sue for a 12.112.B.7 failure or whether he's saying he can communicate in English and therefore is qualified for the job and therefore has a right to complain about a 12.112.B.7 test. Which is it? I need to know at the outset whether he's saying he is able to communicate in English or he's not able to. Mr. Williams is able to communicate in English. So you say he's qualified for the job? He's qualified for the job with reasonable accommodation. All right. I understand your answer. I'll deal with it. Thank you. Okay. Can I follow up on the qualification for the job part of it? Understanding that his 20 years as a locksmith gave him certain capabilities, he was responding to a notice of employment for a stockworker, assistant stockworker, that called for three different categories of background and experience in that realm. And, you know, we don't know what this test actually examined or what might be an adequate equivalent. But I'm interested to know your position that if he was qualified in so far as he could communicate in English, as Judge Raggi was questioning you about, if he responded to this notice of a job and the qualifications were very clear, say it required just four years of stockroom experience, but he thought, well, you know, maybe there's still a chance that they will take me. You never know. I'll just go and take the exam. Would the city still, in your view, have been required to provide an ASL interpreter for every aspect of the exam, the instructions and the questions and answers, merely because he showed up, even knowing and being undisputed, that he didn't have the experience or expertise required to fill that position? Yes, Your Honor. So it is a disputed fact whether he did have the requisite experience to meet the qualifications. So starting from there, this is a completely open... But I'd like to know your answer to my actual question. Yes, yes. Yes, he would have to be accommodated and have an ASL interpreter, even if his background, I would say it's even a clearer situation where it was a, you had to be a, you know, a computer expert of some kind and a knowledge of basic, right? And he goes in and whoever it is goes in and doesn't have that knowledge, doesn't have the experience, clearly not qualified for the job and the qualifications are in themselves not disputable on their face. They're reasonable qualifications for the tasks that need to be done. Is it your position that nonetheless the city would need to provide an ASL interpreter for every aspect of the exam? If the test is open to everybody and they do not look at the qualifications of the people that are taking the exam and make no determinations as to their qualifications at the time that the test is presented, then yes, they would be entitled to have accommodations for the exam. But if they were to look at someone's qualifications before the exam is administered and says, look, you clearly don't have the experience here, then they would have the right to deny them to take the test. Nonetheless, an accommodation, say, look, you're clearly not qualified. You shouldn't take the test. Excuse me. One minute left. Okay, thank you. I hope that answers your question. Yes, so we're looking at sequence and when does screening happen at what level? And so long as the exam is open to the public without survey of their background, no matter what the notes of the job says is required, then the city provides ASL for every aspect of the test. Correct. And they actually list out for blind applicants that they will provide readers and Braille and other aspects. And so but for some reason they will not provide ASL interpreters because they believe that American Sign Language is a different language than English and therefore under no circumstances will they accommodate with an ASL interpreter for any deaf applicant. So what we're saying is if there's any pre-employment screening or test or interview that's open to everybody without any qualification determination at that time, they should be accommodated if they're qualified to take the test. Mr. Williams, no one told Mr. Williams he's not qualified to take the test. He, in fact, took the test. And it wasn't until this litigation where they said, oh, well, making an ad hoc determination, he's not qualified. So we were justified in denying those accommodations. Well, let me ask. I have done a little reading. And my understanding is that ASL is considered a different language. There's different forms of ASL in different native cultures. But you're considered a native ASL speaker. Correct. And the grammar is different than in English, for example. And there are other syntax issues and other kinds of differences so that the deaf community, as I understand, treats ASL as not the same as English. Correct. Correct, Your Honor. Not correct? Yeah, they're different languages. And the reason they're in a lot of areas proficient is because of their disability and their background growing up immersed in American Sign Language to accommodate. Yes. Thank you. Yes. And as to the other point is that the New York City human rights law was not independently examined. And if you look at the legal enforcement guidance, as cited in our briefs, it shows that the obligation to accommodate is at every stage of the employment process, whether it be the interview or testing. And that it is actually the employer's burden to show that it would be an undue burden to provide the reasonable accommodation that is requested. And as the Second Circuit held in Nolvi-IBM, sign language interpreters are a common form of reasonable accommodation. And therefore, it would be their burden to say it was an undue burden, and they haven't shown that in this case. And therefore, we believe that we would be entitled to prevail under the New York City human rights law. Nonetheless, there are significant questions of facts to preclude a summary judgment on both the federal and state and local law here. Well, Mr. Rozinski, this is Judge Cabreras. Did you have some, did you have some, this is on summary judgment, correct? Yes, Your Honor. Was there some discovery undertaken before the summary judgment motions? Yes, Your Honor. What is it that you think might have been wanting? What more would you have wanted in the form of evidence? What more would I have wanted in the form of evidence, Your Honor? Yes. Was there something, was there some evidence that the court failed to consider? Well, we believe that relying on the deposition, Michael query in making his eyeball determination that a housekeeping assistant may or may not qualify as relevant experience, the question of fact that we need to explore more at a trial, because based on their own testimony and depositions themselves, there actually is no unequivocal, he's not qualified for this position. And so, at trial, we'd be able to show the fact finder these disputes as to whether he's qualified or not, whether they independently assess Mr. Williams and his need for an accommodation at the, at the testing stage, and to determine whether his requests for accommodation were reasonable or not, which the circuit has held that whether an accommodation is reasonable or not is often a fact-laden question that should preclude summary judgment. And so that's why we believe that we should be remanded because the legal question that if you can, you can openly discriminate in the testing and interview process, as long as after the lawsuit is filed, you can make a justification. Well, you weren't qualified anyway for that position. So we were justified. It almost creates a affirmative defense to someone claiming discrimination at the interview or testing stage to say later on. Well, yes, we said, you know, we know deaf people need not apply, but we're justified because we can later show that you would have met the qualifications anyway. And so that's what we're trying to overturn here, which is the legal error that we believe that Judge Freeman made. But Judge Schofield in the Philando case, considering the same issue, determined that there were significant questions of facts, including summary judgment on these legal issues where she would independently analyze the job application and interview from the actual position itself. OK, Judge Rossi, any questions? Nothing further. Thank you. Thank you. All right. You have a couple of minutes. We'll hear from Miss Palencia. Good afternoon. Can you hear me? Yes. My name is Gabriela Palencia, and I'm an attorney in the general counsel's office at MTA Bus Company, and I appear for MTA Bus Company, the appellee in this appeal. I will address Plaintiff Appellant's point momentarily, but first we would submit that the disability discrimination claim was properly dismissed by the district court because it correctly held that plaintiff could not make out a prima facie case of disability discrimination because Plaintiff was not qualified for the job position, a required element to make out a prima facie case under the ADA, the New York State human rights law, and the city human rights law. The law in this court is clear about a plaintiff having to show that he or she is qualified for the job at issue, and that is the controlling precedent here, not guidances from the EEOC or the New York City human rights law. We submit that there are no undisputed facts in this case as to whether plaintiff qualified for the assistant stock worker job position. The evidence in the record, the discovery that was just discussed, overwhelmingly supports the finding that plaintiff's past work experience did not meet the required qualifications. As the judges pointed out, the notice of examination clearly and unambiguously lists three scenarios where a candidate would qualify for the job position, and that is to have a stock assistant or stock worker position in either an industrial manufacturing or wholesaling business setting, which specifically stocks railroad parts, automotive, machine, aircraft, marine production parts, and involves plumbing, hardware, or sheet metal supplies and tools, or two years of that full-time experience and a four-year high school diploma, or number three, a satisfactory equivalent of experience. Valencia, I'm going to interrupt you. This is Judge Carney. Excuse me for interrupting, but my understanding is the record shows that the test was open to anyone in the public who wanted to take it, and it was only after that point that the MTA would evaluate whether the person was qualified for the assistant stock worker job. We don't have a copy of the test in the record. We don't know exactly what that covered. If that's the case, and there is this third category that allowed for an equivalent to the kind of experience that was identified in the first and second categories of experience that you gave, wouldn't your way of proceeding unfairly and discriminatorily screen out a deaf individual who is fluent in ASL and who could do fine in communicating and reading in English with the help of, for example, an ASL interpreter in some steps of the test? The person could actually do the job and could have had equivalent experience to satisfy the third category. If that's so, why isn't that unlawfully discriminatory? That is correct that MTA busts never assess the qualifications of either plaintiff here in this case or anybody else. But if someone were to pass, someone who's not deaf, someone who didn't request any reasonable accommodation, they were to pass the test, but then after it's assessed that they don't meet the qualifications, they would not be offered the job. They would not meet the qualifications. My point is, though, if you don't provide an ASL interpreter at the test-taking stage, don't you risk excluding the deaf individual who can do the job and is qualified for the job but needs an ASL interpreter to pass a multiple-choice test? Well, but here we would submit that he is not deaf. I'm not talking about this individual. I'm talking about generally, given the sequence of your process. Right. That would be a different scenario in analysis because you are talking about a person, an applicant who was qualified, who would be qualified. In regards to the ASL interpretation request, Mr. Williams presented himself to MTA busts and stated he presented himself as a deaf person, which one could reasonably understand that it's a person who cannot discern auditory messages. The record shows that he also said to MTA busts when he presented himself that he needed an ASL for people talking. Now, one of the witnesses for MTA busts, Jennifer Garcia, told him, oh, the only oral parts of the exam will be provided in written form, and he and Mr. Williams accepted that. Also, the English requirement, while it may screen people whose language is not English, whose native language is not English, it was established that it's a regulation coming from the Department of Citywide Administrative Services, otherwise known as DCAS. Appellant never disputed that fact. In fact, the district court followed case law saying that if it's a government regulation that screens out a certain population, that that is not discriminatory per se. The English requirement was never raised in the appellate papers. Like I said, it's undisputed that Mr. Williams' first language was not English, but it's also undisputed that MTA busts adhere to that regulation. All the jobs that MTA busts, as well as the sister agencies, have to adhere to DCAS. The English requirement is in most, if not all. And regarding your question about the satisfactory equivalent, you know, here we submit that his two only jobs of locksmith and housekeeping assistant do not match any of those qualifications. It's undisputed that at no time did he work as a stock worker. It's undisputed that he never worked in, you know, in a transportation setting, the machine, aircraft, automotive. His job duties as an assistant housekeeping were cleaning and stocking supplies to perform those tasks. So, we submit that there is no issue for the jury to decide in this case. Could you address your opponent's argument that the New York City human rights law provides a somewhat different and more generous standard to Mr. Williams that the MTA didn't issue? Sure. So, the New York – while it is correct that the New York City human rights law does – its mission is to provide broader protections than under the ADA or the state human rights law. But as the district court correctly held and we agree with that decision, the three laws still have in common the element of showing that an applicant or a plaintiff shows that he or she is qualified for the job in question. And while one of the differences between the city law and the state and ADA counterparts is that instead of the employee or the applicant having the burden to show that he or she was qualified, it is the employer's burden. And here, we would submit that we meet that burden. Again, overwhelmingly, it's undisputed that even plaintiffs, as he understood the qualifications, testified that he did not think he was qualified for the position and just wanted to get his foot in the door. Let me ask, Judge Schofield in Freelando said that the absence of the word qualified or otherwise qualified in subsection B-7 of 12-112 suggests that a different standard is applied for job applicants. Is she just wrong in that? That is correct. And I believe that the standard that she followed was a two-pronged standard when it comes to examinations. One, whether the applicant can show that he or she is qualified for the job. In other words, they can perform the essential functions of the job. And the second prong, whether the test in itself was developed and its purpose is to test English literacy or a certain kind of grade. And in that case, I don't recall – well, I recall that at the trial, it was found that the exam was developed to test English literacy, which here, the main purpose of the exam was not that. But also, it was found that Freelando was not qualified for the job position. Excuse me, you have one minute left. Thank you. I hope that answers your question, Your Honor. Thank you. If there aren't any other questions, I will continue. To address my opponent's issues, he mentions that there is an obligation for employers to provide pre-employment – reasonable accommodations for the pre-employment process, and MTABUS never disputes that. And, in fact, we did. Plaintiff doesn't mention this, but we did offer the written instructions, which were the only oral parts of the exam, and plaintiff accepted. So, as I said, he presented himself as not being able to hear, quote-unquote, people talking, and we provided a reasonable accommodation that was different, and he accepted. Also, addressing the argument that MTABUS has a blanket policy of never providing ASL interpreters, that's not just the case. The discovery showed that MTABUS analyzes every reasonable accommodation request on a case-by-case scenario, but the ultimate authority is, again, the DECAS, and that is undisputed, never raised in the appeal brief. And, finally, if there are no remaining questions, given these facts and for the reasons just stated, we would submit that the district court's decision should be affirmed. Thank you. Thank you. Mr. Rosensky, you have two minutes. Yes. Yes, I just want to refer to one of the comments that the appellate counsel said. If your honors will look at the Appendix 137, this is a 30B6 deposition of Robert Alexander, and there's a question. Is it the position of DECAS that you will not test in American Sign Language? We will not test in languages other than English. Why is that your position? Because it's a requirement, I believe, from the civil service law that the civil service candidates understand and be understood in English. So, you know, there is across the board policy that they will not provide an American Sign Language interpreter for the exams to accommodate. Is that something that has been litigated at the DECAS level? I mean, it seems that these are administrative requirements that apply across the board to hiring in New York City, and the agencies don't seem to have much flexibility in how they implement that. Am I mistaken in understanding that? So, they cannot – so, this is not a civil service exam, so they're actually not required to follow the DECAS requirements for the assistant stockworker exam. And so, there is technically no requirement under any civil service law that they can't provide these sign language interpreters. And so, regardless – and they also cannot enter into contracts that discriminate. Even if they do have a contractual obligation with DECAS to not provide interpreters. I thought there was a DECAS requirement that they be – that applicants be able to read and speak in English. It just says, understand and be understood in English. And so, that can be accomplished with reasonable accommodation for a deaf person. And also, the language requirements to pass a multiple choice test are very different than the day-to-day language requirements of an assistant stockworker. There was another case in which someone sued under the same provisions to be a sanitation worker for the City of New York. And they still claim that they would not provide a sign language interpreter for a sanitation worker exam. And we all – and so, it doesn't matter what the position is or how much English is required. The skills necessary to take the exam, as your Honor has said, are different than the everyday, day-to-day jobs. Which is why each one should be independently considered and accommodated accordingly depending on the situation. So, with that, we believe that the court should remand because, at the very least, there are significant questions of fact and the law is clear. And we cite to various areas in our brief, which I'm not going to repeat, but both the EEOC, the ADA, the statutes of both the New York City Human Rights Law and the guidance all say that you must evaluate this process independently. And especially in a case where it's open to everybody. So, because otherwise, deaf people are going to be unnecessarily excluded, just like Mr. Williams and Mr. Philando, from getting a fair shot, just like everybody else, to show their knowledge and skills. And, to be clear, there is testimony in this case that this test is not measuring English literacy, which we cite in our brief. So, there's no, they can't even argue that while this test is a test to measure the English literacy required to be an assistant staff worker, they can't even make that argument. Let me ask you a quick question about that, if I may. It may not be measuring English literacy, but it does test in a very basic way whether someone is literate in English, whether they can read and understand English, doesn't it? By way of, yeah, by way of the exam, it would test, it would measure their ability to comprehend the questions at hand. This is Judge Raggi. We were to assume that the test was problematic in the way you indicate. Can your client complain about that if he cannot show that he's qualified to handle the English requirements of the job? In short, it's the question, not whether he's qualified to take the test, but whether he's qualified for the job. In this instance, it is still a question of fact whether he's qualified for the job at hand. And that's why, that's why factually that's... I thought you said, though, that even the job at hand would require an accommodation, right? It may from time to time, as you'll see in the exhibit. What would be a reasonable accommodation? So, for an assistant stock worker, there may be times he may need to write basic things down, like categorizing where certain boxes are. And he has the ability to do that and has enough English ability to do those types of minimal writing. But if they were going to do an employee orientation and training that's going to be all day long, they may need to bring in an interpreter so that he can understand what's going on for that all day employee training or whatnot. But for the day-to-day stuff, his English, if you read the expert report that we have, it will show that his English is sufficient to do the day-to-day duties of an assistant stock worker, but it's more problematic to take a sophisticated multiple choice exam. What are you pointing to in the record? I'm not entirely sure that I know in a day of computers and large warehouses and so on exactly what the duties of an assistant stock worker would be and how much they would require the use of English or calling out to people, moving materials and forklifts and so on. I don't know where in the record you're pointing to for the description you're understanding about that only occasionally would need to write down a category of work. Did I miss something in the record? If there is a full description from a literacy point of view and communication point of view, what would be required of Mr. Williams for his job? Yes, Your Honor. There's a job description in the record, which you can see the basic day-to-day duties in that job description. Fairly high level, right? To be an assistant stock worker? Yeah, it is high level, Your Honor. I'm sorry. I meant the description was high level. We're talking about a very detailed level, looking at it from what communications would need to be required. You said you thought very few is what I was understanding. I wasn't sure what that was based on. Based on my interpretation, Your Honor, and also of the testimony that has come out in various depositions, which is why I think a fact finder needs to look at if we are going to go the whether he's qualified or not route. That's why a fact finder should determine whether he is or not, if that's the legal test we're applying here. This requirement is not established just by the MTA. This is a Department of Citywide Administrative Services requirement, correct? It is a requirement of both. They say that they follow, but they're all under the auspices of the City of New York. That has not been challenged in your lawsuit. You do not challenge the fact that the DCAS requires an understanding of and an ability to be understood in English. This is not a class action, Your Honor. Or even an individual challenge by your client against the DCAS requirement. DCAS is not a party to this lawsuit, but we're just challenging the appellees. But you don't challenge the fact that the DCAS requirement is binding on the MTA? For this position contractually, not statutorily. Okay, thank you. Thank you very much, Mr. Osinski. We will reserve decision, and I'll ask the clerk to adjourn court. Court is adjourned.